Kim M. Johnson-Krueger
Pro Se

**FILED**
JAN 17 2017

# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH DAKOTA
# SOUTHERN DIVISION

Kim M. Johnson-Krueger

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA AND DOES I-X inclusive, and ROES I-X inclusive,

    Defendants.

Case No.: 4:17-cv-4004

COMPLAINT and JURY DEMAND

Plaintiff, Kim M. Johnson-Krueger, for her claims against Defendants, allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiff KIM M JOHNSON-KRUEGER (hereinafter Plaintiff) is a 51 year old resident of Sioux Falls, South Dakota.

2. At all relevant times, on information and belief, Defendant UNUM LIFE INSURANCE COMPANY OF AMERICA ( hereinafter "defendant" or "defendant UNUM" or "defendant INSURANCE COMPANY) was a Massachusets corporation registered to do business in South Dakota, and which intentionally availed itself of and subjected itself to all laws and remedies available under South Dakota law.

3. The true names and capacities, whether individual, corporate, associate, or otherwise of defendants DOES I THROUGH X, inclusive, and ROE CORPORATIONS I through X, inclusive, are unknown to plaintiff who therefore sues those defendants by such fictitious names, but are believed to be agents, servants, employers, or employees of the defendant named in this complaint. Plaintiff is informed and believes, and upon such alleges, that each of the defendants designated as a DOES and or ROE CORPORATIONS is responsible in some manner for the denial of the claim referred to in this complaint, and caused injury and damages directly to the plaintiff as alleged in this complaint.

Plaintiff asks leave of this Court to amend this complaint and insert the true names and capacities of said DOES I-X, inclusive and ROE CORPORATIONS I-X, inclusive, when the same have been ascertained by plaintiff together with the appropriate charging allegations, and to join these defendants in this action.

## NATURE OF THE ACTION

4. This is an action to compel the defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA and/or Defendant INSURANCE COMPANIES to rescind and correct Defendants' termination of disability income replacement payments payable and owing under state law to the plaintiff Kim M. Johnson-Krueger in accordance with the policy of insurance purchased by the plaintiff and duly issued to her by Defendant UNUM.

## GENERAL ALLEGATIONS

and critical illness benefits. policy number 933067, sold by defendant Unum Life Insurance Company of America.

6. Plaintiff Kim M. Johnson-Krueger purchased the policy so that in the event of illness or injury that resulted in disability, she could meet her financial obligations and provide for herself and family.

7. In exchange for her payments made to Unum, Unum promised to pay Plaintiff a monthly benefit equal to 60% of her monthly earnings., in the amount of $1132.00 per month for up to 19 years if she became disabled from performing her own occupation.

8. The policy defines "totally disabled" as: "when she is unable to perform the principal duties of her occupation."

9. The policy provides for monthly disability income payments to be paid by defendant Unum Life Insurance Company of America to Ms. Kim M. Johnson-Krueger for each month that she is disabled from performing the duties of her occupation through the age of 65.

### PLAINTIFFS ILLNESS/SYNDROME

10. In March of 2012 Kim M. Johnson-Krueger was experiencing severe pelvic pain and heavy menses, and saw Dr. Kevin Hamburger, gynecologist. During the pelvic exam Plaintiff experienced sudden further and severe pain, Dr. Hamburger telling her, gynecological she was fine, but that he was concerned with her bladder and referred her to a urologist, Dr. Kneib.

11. Plaintiff went back to work while awaiting her scheduled visit with Dr. Kneib. Three days later, while at work, Kim M. Johnson-Krueger felt a trembling up her spine, lost her breath

and fell from her desk. Her boss, advised her to leave and not come back until she knew what was wrong with her. In addition to the issues she originally saw Dr. Hamburger for, now was an added and very painful spinal issue. Plaintiff went home, called Dr. Kneibs office hoping she could see him even sooner, and had the date moved up by a few days.

12. Kim M Johnson then saw Dr Kneib, referred to by Dr Hamburger in March of 2012, who had done a CT Scan and an exam of her bladder. Dr. Kneib told plaintiff that her bladder was in excellent condition however, the CT scan showed an "obliterated" L/4-L/5 spinal disk. Dr Kneib explained to Kim M Johnson-Krueger that she had serious issues and needed to be seen by a gynecologist. She explained that a gynecologist is who sent her to him. He then wrote a letter to Dr. Hamburger with a follow up of his findings. That same day Kim M. Johnson-Krueger called Dr. Hamburgers office to make a follow up appointment. They told her there was nothing to follow up, and Kim stated that Dr. Kneibs report says otherwise and that she would be in the next day. They told her " you can't just barge in.".

13. Kim M.Johnson-Krueger did show up at Dr. Hamburgers office the next day and was met at the door by management , who told her, "there is nothing in the records to indicate anything wrong gynecologically, and that there was nothing they could do." Plaintiff insisted on speaking to a nurse to show them Kneibs report, but the nurse agreed, there was nothing wrong as far as they were concerned.

14. Plaintiff Kim M. Johnson-Krueger then made another appointment to see another gynecologist, in April of 2012, days later, with a Dr. Angela Aldrich. Kim shared with Dr. Aldrich her previous visit with Drs. Hamburger and Kneib. Dr. Angela Aldrich advised plaintiff that she most likely suffered from endometriosis, and suggested Kim M. Johnson-

Krueger has a hysterectomy. Kim M. Johnson-Krueger stated that in addition to the gynecological issues she first experienced, she now had severe pain going up her spine from her lower back, and wanted to see a neurologist before having a hysterectomy. Surgery was scheduled for on or near April 19th 2012.

15. Plaintiff Kim M. Johnson-Krueger then made an appointment to see a neurologist and met with Dr. Adams, in late March or early April of 2012. She shared with him the CT results of the scans that Dr. Kneib had performed, and the previous doctor visits she had recently had with Dr. Hamburger, gynecologist Dr. Kneib, Urologist, and Dr. Aldrich gynecologist.

16. Dr. Adams dismissed the report of the obliterated disks as having been over exaggerated. He also told Plaintiff that she "would benefit greatly by having a hysterectomy, and that it could even alleviate the pain she was experiencing in her spine." He treated Plaintiff for several weeks with various shots, and put her through very extensive testing which Plaintiff states, "seemed to have nothing to do with her complaint of severe pain in her spine.

17. On or near April 19th 2012 plaintiff Kim M. Johnson-Krueger had a trans vaginal hysterectomy performed by Dr. Angela Aldrich. Plaintiff stated that it brought some relief, but was now suffering a loss of bladder and bowel control.

18. In June of 2012, Dr. Adams ordered an MRI scan of Plaintiffs lumbar, thoracic and cervical spine. The results were devastating, and Dr. Adams advised Kim M. Johnson-Krueger that she needed immediate surgery or risk losing both her bowel and bladder. Plaintiff told Dr. Adams, that she knew it was serious the first day she walked in , and now had no faith or trust in him, severed ties with him and began seeking out a qualified neurologist.

19. In March of 2013, Social Security scheduled a visit with a neurosurgeon., Dr Capek. His findings were that there was no neurological compromises. Plaintiff Kim M. Johnson-Krueger states Dr. Capek asked her why "they let them perform a hysterectomy"? She did not understand his question and was confused due to the fact that she thought he was examining her for her spinal issues nor had any cause to question Dr. Aldrichs' diagnosis or surgery.

20. Plaintiff Kim M. Johnson-Krueger saw Dr. Espiritu in SD, who scheduled her for physical therapy. Kim-Johnson-Krueger states that the one physical therapy engagement she participated in, caused both of her legs to go numb and knew that it was not possible or wise to continue. Dr Espiritu offered to cage her lower disks, but Plaintiff Kim M. Johnson feared that the damaged disks above L/4 L/5 weren't strong enough to support the hardware. Plaintiff turned down the offer and continued her search for a qualified neurosurgeon.

21. Plaintiff Kim M. Johnson-Krueger then saw Dr. Suga, who stated there was nothing serious to be concerned with regarding her spine. Plaintiff Kim M Johnson-Krueger continued so search for a qualified neurosurgeon.

22. Plaintiff Kim M. Johnson-Krueger states she finally chose Laser Spine Institute of Arizona because they were the only doctors who looked at each and every disk in her spine, told her what was wrong with each, and how and what they would do to correct the damage to them. Kim M. Johnson-Krueger went to Arizona in September of 2012 and had 19 surgical procedures performed in her spine, in 10 days.

23. After several weeks in recovery, Plaintiff then called on a physical therapist. she knew from the past, Jeffrey Steinberger .Trusting that he knew her history and having had a previous

relationship with him, she shared all of her medical history with him and asked his advice. Jeffrey Steinberger explained that had this injury been caught sooner, it may have well not ended as badly. Mr. Steinberger began physical therapy treatment for patient Kim M. Johnson-Krueger at that time. Still, Plaintiff has not been diagnosed.

24. Kim M. Johnson-Krueger saw her family doctor, of 20 plus years, Kim Pederson, for advice and follow up of her surgeries. He referred her to Dr. Ripperda a, physiatrist.

25. Kim M. Johnson-Krueger upon meeting Dr. Ripperda, along with her entire recent medical history, explained that she just had 19 procedures performed, yet there were more to do, and on the advice of LSI, she was to allow for the swelling in her spine to subside, and then later come back to complete the rest of the surgeries. Dr. Ripperda advised her to begin physical therapy, but again she explained she is very limited to what she can do. She continued to see Dr. Ripperda and was waiting for him to give her the ok to go back to complete the remaining surgeries that LSI said were needed. At that time, Ms. Johnson-Krueger was struggling with loss of bladder control, and made and appointment to see a uro/gynecologist, and met with Dr. Barker. He fitted plaintiff with a pessary ring and advised her that it will not get better, that due to having a complete hysterectomy, there are no longer any organs holding her bladder in place and that eventually this will be a serious problem but that was in the future.

26. When Kim M. Johnson-Krueger explained to Dr. Ripperda, that she was having serious bladder issues and believed it to be related to her back his response was, "No, that is a very serious injury., and that it was very common for women her age to have this bladder issue." Plaintiff Kim M. Johnson-Krueger states she cried at that very moment, because she knew

then, that she was not being taken seriously., nor was she going to have an answer to her problems and that her very serious medical issues would be dismissed still and again, no diagnosis.

27. It is at that time, Kim M. Johnson-Krueger stopped seeing any doctors. She felt utterly helpless, physically broken and, finally, gave up.

### MS. JOHNSON-KRUEGERS NOTICE TO DENDENDANTS CLAIM

28. In the month of March 2012, Kim M. Johnson Krueger completed Defendant UNUMS "Request for disability Benefits and made a claim for short term and then long term benefits. She also made an accident claim for what had happened to her spine. The accident claim was denied, but the short term disability was approved for the onset of the injury in March of 2012 and long term disability was approved as of September 2012. Unum allowed for and paid the Plaintiff $1132.00 per month for long term disability for the next two years, to which she was entitled under the policy. On information and belief, Defendant waived its premium payments on and after the inception of its payments through such time as it terminated those payments including all polices client had with UNUM.

### DEFENDANTS IMPROPER AND UNFOUNDED TERMINATION OF THE LONG TERM DISBILITY BENEFITS IT OWED TO PLAINTIFF UNDER HER POLICY.

29. In March of 2014 Kim M. Johnson-Krueger was invited to a hearing with the ALJ of social security, accompanied by an attorney Latorya Fowler which UNUM provided. The judge found that plaintiff had mental limitations due to constant pain. He stated that " the claimants treatment providers opinion had credible testimony, reported activities of daily living and that her medical findings support a view that she is limited to a range of sedentary

work". The ALJ relied in large part on the testimony during the hearing on February 18. 2014 and information provided by a physical therapy assistant. He found Plaintiffs testimony to be persuasive, straightforward, candid and truthful. He determined that Plaintiff had less than sedentary work capacity limited to simple, routine and repetitive tasks of about three to four steps on average.

30. Attorney Latorya Fowler, provided for by UNUM, told her client Kim M. Johnson-Krueger after the hearing, that the judge said " These medical malpractice cases always end up in our lap."

31. UNUMS decision differed from the SSA's decision, for the following reasons.

The SSA gave significant weight to the February 12, 2014 GENEX Medical opinion of ability form completed by Ms. Johnson . Ms. Johnson is a physical therapists assistant, and not a physician or physical therapist.

Mr. Steinberger is a physical therapist at the same facility as Ms. Johnson. As noted, he has since stated that the physical therapists defer commenting on restrictions and work capacity to your treating physicians.

The severe limitations outlined by Ms. Johnson are not documented in any other treatment records, including physical therapy records".

Unum stated that Plaintiff did not have a treating doctor complete a GENEX Medical Opinion of ability form and accused her of behaving fraudulently by asking Ms. Johnson, assistant to Jeffrey Steinberger to fill it out. Kim Johnson-Krueger asked Mr. Steinberger to complete the form only because she felt at that time that he was the only doctor that had actually reviewed her entire case, and would understand her medical issues. Dr. Steinberger

was unavailable when Kim M Johnson-Krueger arrived with the form and asked the therapists' assistant that was treating her to fill it out due to a deadline. UNUM in a conversation with Plaintiff, questioned her relationship with therapists' assistant Ms. Johnson, and even asked if she was related due to having the same surname. Plaintiff states that it felt as if UNUM were accusing her of fraud and doing shady business and it destroyed her relationship with the one doctor that she believed could help her at the time. She felt so uncomfortable after this, that Kim M. Johnson-Krueger discontinued her relationship with Jeffrey Steinbergers office.

32. On May 2nd 2014 UNUM sent a letter to plaintiff claiming that upon a successful Social Security claim, they had overpaid her and were seeking a payment of $14,508.00, for over payment.

33. On August 2014 UNUM stated that Plaintiff no longer qualified for disability payments. Plaintiff appealed that decision and was terminated in January of 2015.

34. Plaintiff Kim M. Johnson-Krueger hired a medical expert and finally learned a diagnosis for her spinal condition. This medical expert diagnosed Cauda Equina syndrome, which occurred in late February of 2012 or early March of 2012 after her visit with Dr. Hamburger, which is a devastating injury, is irreparable, and once fully blown, Plaintiff Kim M. Johnson-Krueger faces complete paraplegia from the waist down.

35. None of the information provided to UNUM was accurate or complete, therefore their decision to terminate Plaintiffs claim of long term disability, and the policies that were terminated because of it, were never based on true, correct/or complete information.

It is interesting to note, that even though UNUM had all the same medical information available to them, that their conclusive findings were not anywhere near the facts to the Plaintiffs case, and what was found in her medical experts discovery, using the very identical records UNUM has had access to, at all times.

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

Plaintiff re alleges and adopts by reference all paragraphs above as if fully set forth herein.

36. Plaintiff Kim M. Johnson-Krueger and the Defendant UNUM LIFE INSURANCE OF AMERICA entered into a valid, binding insurance contract for disability both long and short term, life insurance, cancer/critical illness, and accident insurance (which covers paralyzation) for income replacement payments as set forth in the policy defendant issued to Plaintiff in November of 2011.

37. Since at least March of 2012, Plaintiff Kim M. Johnson-Krueger has been disabled under the terms of the policy, having been by reason of injury/illness unable to perform the duties of her regular occupation and being under the regular and personal care of a physician.

38. Plaintiff performed all conditions precedent required by the policy, to the extent that such conditions were required under the policy terms.

39. Any one or all of the defendants breached the contractual obligations which arose under the policy by terminating plaintiffs disability income payments effective august of 2014 and for demand of over payment of $14,000.00 plus dollars

40. Defendants breach has caused Plaintiff to incur special damages in excess of $10,000.00 including, but not limited to : the past and continuing monthly disability payments she

should have received from Defendant since August of 2014 and appropriate interest thereon; the loss of insurance policies lost that should otherwise have been paid for, payments being waived due to disability, losses incurred as a result of early withdrawl of savings and or retirement funds, including but not limited to lost opportunity costs, loss of capital gains, and or reasonable interest and loss of tax payments and penalties thereon: losses associated with other incidental expenses' and all other reasonably foreseeable and consequential damages flowing naturally from Defendants breach and or properly payable under statute or common law, all in amounts not fully ascertained, but within this courts jurisdiction. When plaintiff determines these sums, she will amend this complaint accordingly or prove such sums at trial.

41. As a further result of Defendants breach, Kim M. Johnson-Krueger suffered and continues to suffer anxiety, worry, mental and emotional distress all to Plaintiffs general damages in a sum in excess of $10,000.00.

## SECOND CAUSE OF ACTION
## DEFENDANTS BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING and DEFENDANTS BAD FAITH UNDER COMMON LAW

Plaintiff re alleges and adopts by reference all above paragraphs above as if fully set forth herein. In addition, Plaintiff states each of the following allegations in the alternative or in any aggregation.

42. Any or all of the Defendants owed Plaintiff at all pertinent times an implied duty of good faith and fair dealing. Any one of all of the defendants breached this implied duty of good faith and fair dealing by terminating and failing to pay Kim M Johnson-Krueger the continuing disability income payments owed to her after August 2015 and to the present,

which failure was without a reasonable basis or with knowledge or reckless disregard for the absence of any reasonable basis.

43. Any or all of the Defendants further breached the implied duty of good faith and fair dealing by refusing to give its insured Kim M. Johnson Krueger every reasonable benefit of the doubt. Instead any one of all of defendants placed their own pecuniary interests above the insureds interests even though there was or should have been , substantial evidence in the claims file that Plaintiff was severely disabled under the same policy.

44. Any one or all of the Defendants further breached the implied duty of good faith and fair dealing by refusing to reinstate plaintiffs disability income payments after receiving additional medical evidence demonstrating that her medical condition had actually worsened, not changed for the better ,nor improved as of November 2014 , in a manner that would warrant termination of her disability income payments effective that date.

45. Any or all of the Defendants further breached the implied duty of good faith and fair dealing by terminating and failing to pay Ms. Johnson the continuing disability income owed to her after August 2014 and to the present, which failure was not premised on any improvement in her condition—the very medical condition which defendant had earlier found satisfied the terms of the disability contract and warranted its payment of monthly benefits under the policy.

46. From the date the Defendant terminated Plaintiffs benefits effective August of 2014 Defendants on information and belief, have acted intentionally and unreasonably in relying on unnamed consultants and or non treating doctors and or non examining doctors who were not qualified to render opinions on Kim Johnson-Kruegers medical condition, and then

using their secret reports or opinions to justify further delay and refusal in rendering a fair and accurate decision on Plaintiffs claim. Defendants' actions in this regard further evidence a breach in the implied duty of good faith and fair dealing owed Plaintiff.

47. Plaintiff is informed and believes that Defendants intends to collect over payment of approximately $14,000.00 and will continue to deny and withhold in bad faith the policy payments due to Plaintiff absent being compelled to make such payments through the final judgment of this court.

48. Defendants breach has caused Plaintiff to incur special damages in excess of $10,000, including , but not limited to : the past and continuing monthly disability benefits she should have received from Defendant since August of 2015 and appropriate interest thereon: the loss of insurance policies lost that should have otherwise been waived during her period of disability ; losses incurred as a result of lost opportunity costs, loss of capital gains and or reasonable interest , losses associated with other incidental expenses; and all other reasonably foreseeable and consequential damages flowing naturally from Defendants breach and or properly payable under statute or common law, all in amounts not fully ascertained , but within this Courts jurisdiction. When plaintiff determines these sums, she will amend this complaint accordingly, or prove such sums at the time of trial.

49. As a further result of defendants breach, plaintiff suffered ad continues to suffer anxiety, worry, mental and emotional distress, all to plaintiffs general damages in a sum in excess of 10,000.00.

50. Any one or all of the Defendants intended for their conduct to cause Plaintiff injury or proceeded with their conduct in conscious disregard for Plaintiffs rights as to subject Plaintiff to cruel and unjust hardship constituting malice, oppression, or fraud under

SDCL § 58-33-67.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE SOUTH DAKOTA UNFAIR TRADE PRACTICES ACT

Plaintiff re alleges and adopts by reference all above paragraphs as if fully set out herein.

51. Any one or all of the Defendants engaged in Unfair Trade Practices in violation of South Dakota Unfair Trade Practices Act by failing, inter, alia, to provide Plaintiff with a reasonable explanation for the August 06th 2014 termination of her disability income payments based on the facts of her claim, the terms of the policy and applicable law S.D.C.L §58-33-67.

52. Any one or all of the Defendants engaged in unfair trade practices in violation of South Dakotas Unfair Trade Practices Act by failing to continue to pay benefits to plaintiff after August 6 2014, when liability under the subject policy was reasonably clear.

53. On or about Aug 6 2014, any one or all of the Defendants knew or should have known that there was no reasonable basis to terminate payments to Plaintiff.

54. On or about Aug 6 2014 any one or all of the Defendants knew or should have known that there was no evidence of medical improvement in the Plaintiffs condition such that termination of payments to plaintiff was warranted.

55. On or about Aug 6 2014 any one or all of the Defendants knew or should have known that its unnamed consultants and or non treating doctors and or non examining doctors were not qualified to render opinions on Kim Johnson-Kruegers' medical condition, and that using their secret reports or opinions to terminate Kim Johnson-Kruegers' payments or to justify

further delay and refusal in rendering a fair and accurate decision on her claim was unfair and constituted no reasonable basis to terminate said payments.

56. Plaintiff is informed and believes that Defendants intend to and will continue to deny and withhold in bad faith the policy payments due to Plaintiff in violation of S.D.C.L. § 58-33-67, absent being compelled to make such payments throughout the final judgment of this Court.

57. Defendants breach has caused Plaintiff to incur special damages in excess of $10,000.00 including but not limited to: the past and continuing monthly disability benefits she should have received from Defendant since at least August 6 2014 and appropriate interest thereon: the additional loss of life, critical care, and accident policies that should have otherwise been waived during her period of disability and appropriate interest thereon: losses incurred as an early result of savings withdrawl and or retirement funds, including, but not limited to lost opportunity costs, loss of capital gains and or reasonable interest, and loss of tax payments and penalties thereon: losses associated with other incidental expenses: all other reasonably foreseeable and consequential damages flowing naturally from Defendants breach and or properly payable under statute or common law, all in amounts not fully ascertained, but within this Court's jurisdiction. When Plaintiff determines these sums, she will amend this complaint accordingly, or prove such sums at the time of trial.

58. As a further result of Defendants breach, Plaintiff suffered, and continues to suffer anxiety, worry, mental and emotional distress, all to Plaintiffs general damages in a sum in excess of $10,000.00

## FOURTH CAUSE OF ACTION
### DEFENDANTS LIABILITY FOR DEFAMATION

Plaintiff re alleges and adopts by reference all Paragraphs above as if fully set forth herein. In addition, Plaintiff states each of the following allegations in the alternative or in any aggregation.

59. Any one or all of the Defendants owed Plaintiff at all pertinent times the true facts of her illness/syndrome and the facts were always there in plain sight for UNUM to see. In not doing so, any one or all defendants engaged in defamation of Libel violating SDCL §20-11-3. The complete truth and devastating details of Plaintiffs injury were unknown to her until she hired an independent medical expert in 2015.

60. Defendants accused Plaintiff of fraud, regarding all of the deferments from all of the doctors she had seen.

61. Defendants defamed Plaintiffs character when Plaintiff was asked what her relationship was to Ms. Johnson (physical therapy assistant). Defendants asked Plaintiff if she was related to Ms. Johnson, and if this "friend" was doing her a favor by asking her to fill out their requested medical opinion of ability. Plaintiff states that upon questioning from UNUM regarding Ms. Johnson and her "relationship with her, that it caused her to feel as if she had done something fraudulent and shady., when it was a completely innocent act and was no more than the plaintiff trying to fill the request of UNUM. Kim M. Johnson has never met Ms. Johnson before her interaction with Dr. Steinberger, and is not today nor ever was related in any way to Ms. Johnson , physical therapist. Plaintiff states that this damaged her relationship with the one doctors office she felt safe with, and Plaintiff stopped seeking treatment from Jeffrey Steinberger due to embarrassment and shame

caused by Defendants actions.

62. Defendants breach has caused Plaintiff to incur special damages in excess of $10,000.., including, but not limited to: the past and continuing monthly disability benefits she should have been receiving from Defendant since at least August 6th, of 2014, and appropriate interest thereon: the loss of insurance policies that should have been waived during her period of disability and appropriate interest, thereon; losses incurred as a result of the early withdrawl of savings and or retirement funds, including but not limited to lost opportunity costs, loss of capital gains and or reasonable interest and loss of tax payments and penalties thereon: losses associated with other incidental expenses; and all other reasonably foreseeable and consequential damages flowing naturally from Defendants breach and or properly payable under statute or common law, all in amounts not fully ascertained , but within this Courts jurisdiction. When Plaintiff determines these sums, she will amend this complaint accordingly , or prove such sums at the time of trial.

63. As a further result of defendants breach, Plaintiff suffered, and continues to suffer anxiety, worry, mental and emotional distress, all to Plaintiffs general damages in a sum in excess of $10,00.00.

64. Any one or all of Defendants intended for their conduct to cause Plaintiff injury or proceeded with their conduct in conscience disregard for Plaintiffs rights , as to subject Plaintiff to cruel and unjust hardship and direct violation of plaintiffs rights, constituting malice, and oppression, thereby constituting entitling Plaintiff to recover punitive damages in excess of $10,00.00

## JURY DEMAND

Plaintiff requests a trial by a jury of twelve to be held in Sioux Falls South Dakota.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter judgment for Plaintiff and against any or all Defendants as follows:

65. For Plaintiffs' special damages, including past and future medical and attendant care expenses, past and future lost income and loss earning capacity, and other economic and pecuniary losses, including household services; in excess of $10,000.00

66. For Plaintiffs' general damages compensatory damages, including pain, suffering, disability, loss of the ability to enjoy to life, and loss of consortium in a fair and reasonable amount;in excess of $10,000.00.

67. For Plaintiffs' punitive damages in excess of $10,000.00.

68. For Plaintiffs' prejudgment and post judgment interest;

69. For reasonable attorneys fees ( if one is hired) and costs of suit incurred; and

70. For such other and further relief as this Court finds just and proper.

By: Kim M. Johnson Krueger Pro Se

3509 S. Marion Road #3  Sioux Falls, South Dakota 57106

605-251-2879 email: Kimmer_sd2002@yahoo.com      Dated: 1-17-2017

*Kim M Johnson-Krueger*